Johnson, J.
The rate on commercial coal in force at the time of filing the complaint by the New York Coal Company from Nelsonville to Toledo was one dollar per ton. This was the rate in force as to all stations beyond Marion. The rate to Marion was eighty-five cents, and from that point south lower rates prevailed.
On the hearing before the commission, at which considerable testimony was introduced, the rate to Toledo was reduced to eighty-five cents per ton, with .proportional rates to the intermediate points.
The proceeding in the court of common pleas was brought under Section 543 et seq., General Code. It is provided in those sections that a certified transcript of all of the proceedings had and testimony taken before the commission shall be filed in the court of common pleas, and that a party to the action may introduce original evidence in addition to the transcript of the evidence offered before the commission.
Section 550, General Code, provides that in actions under the preceding sections to vacate or set aside such order of the .commission, the burden of proof shall be upon the plaintiff to show by clear and satisfactory evidence that such order is unlawful or unreasonable. Since this action was begun, the procedure has been changed by^the act to create the public utilities commission of Ohio (103 O. L., 804, Section 33)..
The courts below, after the performance of their duty to fully examine the evidence and consider the claims of counsel with reference thereto, did *366 not sustain the contention of the plaintiff in error that the order was unlawful or unreasonable.
We have also examined the record, not for the purpose of passing on conflicts in the testimony of witnesses, nor of deciding upon pure questions of fact, but to determine from the record, including the evidence, whether the conclusions of fact, as found by the commission and sustained by the courts below, were so dependent upon questions of law as to be in substance and effect a decision of the latter.
The court will not substitute its judgment for that of the legislature or of an administrative board created by it as to matters within its province. It must appear that the order complained of was unlawful or unreasonable. Until the contrary is shown by the degree of proof required by the statute, the presumption is that rates fixed by the railway commission or its successors, for intrastate traffic, are reasonable and just and yield a compensatory return to the carrier.
In the recent case of Northern Pacific Ry. Co. v. North Dakota, 236 U. S., 585, which involved intrastate rates for transportation of coal, the court say: “The general principles to be applied are not open to controversy. (The railroad property is private property devoted to a public use. As a corporation, the owner is subject to the obligations of its charter. As the holder of special franchises, it is subject to the conditions upon which they were granted. * * * The state may prescribe rules to insure fair remuneration and to prevent extortion, to secure substantial equality of treatment in *367 like cases, and to promote safety, good order and convenience.”
In concluding the opinion it is said: “It is presumed, — but the presumption is a rebuttable one— that the rates which the state fixes for intrastate traffic are reasonable and just. When the question is as to the profitableness of the intrastate business as a whole under a general scheme of rates, the carrier must satisfactorily prove the fair value of the property employed in its intrastate business and show that it has been denied a fair return upon that value. With respect to particular rates, .it is recognized that there is a wide field of legislative discretion, permitting variety and classification, and hence the mere details of what appears to be a reasonable scheme of rates, or a tariff or schedule affording substantial compensation, are not subject to judicial review. But this legislative power cannot be regarded as being without limit. The constitutional guaranty protects the carrier from arbitrary action and from the appropriation of its property to public purposes outside the undertaking assumed; and where it is established that a commodity, or a class of traffic, has been segregated and a rate imposed which would compel the carrier to transport it for less than the proper cost of transportation, or virtually at cost, and thus the carrier would be denied a reasonable reward for its service after taking into account the entire traffic to which the rate applies, it must be concluded that the state has exceeded its authority.”
We assume that the above may be taken as a fair and concise statement of the position of the *368 federal supreme court upon this important subject after full consideration of a number of rate cases which have been recently before it.
The defendant in error points out that it is shown by the record that the Hocking coal district constitutes one of the valuable resources of the state of Ohio; that large amounts of capital are invested in it, large numbers of citizens are.directly employed in its development, and the prosperity and welfare of many industrial and commercial enterprises are dependent-upon the continued existence and growth of the mining operations in the locality; that these are adversely affected by the high rates charged by the defendant for the transportation of coal from this field, and that to remedy these conditions, the complaint was originally filed before the commission. And further, that considerations of public interest suggest a low rather than a high rate on the traffic.
We are not unmindful of the great desirability of the - development of those resources and the highly beneficial results that would accrue to the people of Ohio if all the industries referred to should prosper. Every proper effort of the people and the government should be exerted to bring about this beneficent result. The considerations suggested may be properly, invoked as a ground for the enforcement of reasonable rates; but we are likewise admonished that the rights of the plaintiff railway company are also entitled to consideration, and it is the duty of the state and its administrative agency, as well as of the court, to *369 see that no injustice is done it. The same matter is referred to in the Northern Pacific case, supra.
The court say: “The state insists that the enactment of the statute may be justified as ‘a declaration of public policy.’ In substance, the argument is that the rate was imposed to aid in the development of a local industry and thus to confer a benefit upon the people of the state. The importance to the community of its deposits of lignite coal, the infancy of the industry, and thé advantages to be gained by increasing the consumption of this coal and making the community less dependent upon fuel supplies imported, into the state, are emphasized. But, while local interests serve as a motive for enforcing reasonable rates, it would be a very different matter to say that the state may compel the carrier to maintain a rate upon a particular commodity that is less than reasonable, or — as might equally well be asserted — to carry gratuitously, in order to build up a local enterprise;”
The railway commission, on the hearing of the complaint referred to in this case, was only empowered to fix a rate that was reasonable and that would furnish to the plaintiff company a fair and just compensation. As stated in the language already quoted, “It is presumed, — but the presumption is a rebuttable one — that the rates which the state fixes for intrastate traffic are reasonable and just.c”
The proposition, asserted by the plaintiff in this injunction proceeding, is that the order of the commission was unlawful and unreasonable, and the *370 question before us is whether the record discloses that the plaintiff has by clear and satisfactory evidence sustained its contention.
It is claimed that the commission, in arriving at its conclusion, relied upon the lake-cargo coal rate from Nelsonville to Toledo as a basis for comparison in fixing the cost of service and the rate to be fixed on commercial coal. It is insisted that this is an unfair basis of comparison because of the fact that the lower differential of lake-cargo coal is made for the reason that some consideration must be given to its long haul to final destination at the lake ports for shipment to the Northwest; that long-haul rates are normally lower per mile than short-haul rates; that lake-cargo coal is transported under peculiar conditions, altogether different from those that pertain to the carrying of commercial coal; and that lake coal moves in train loads in the summer and does not require such switching and delivery service as commercial coal.
The plaintiff had formerly established a rate of eighty-five cents for lake-cargo coal from Nelson-ville to Toledo. This was reduced to seventy-five cents by the plaintiff and this reduction is stated to have been made to meet a rate fixed by the interstate commerce commission in another proceeding concerning other parties. It is not contended that the rate of seventy-five cents was not a fair one, and if the commission and the courts below assumed that such a rate, voluntarily accepted by the plaintiff, was compensatory and reasonable in *371 the light of the evidence, we think that no ground of complaint.
The evidence in the cáse consisted of public documents, including various reports of the plaintiff company, and the testimony of a number of officers of the plaintiff company and other witnesses.
In truth, it may be said that the determination of the entire cas:e depends very largely on the evidence. If the result at 'which the commission arrived is justified by the whole record, the process of reasoning by which that result was arrived at, is not important except as it might assist the reviewing courts in the investigation of the case.
It was shown in the evidence that the plaintiff and other railroad companies had accepted and fixed rates for similar services under similar conditions, and as to this also we remark that the commission and the courts below might well have assumed, in the light of the evidence that appears in the record, that these rates, voluntarily accepted and maintained by the company, are reasonable and compensatory, and that they furnish a reasonable basis for comparison or to throw light upon the general subject and give assistance to the commission in fixing a fair rate.
■ One of the witnesses, Hillman, testified as an expert on the question of freight ratemaking, and his testimony occupied a large portion of the record. He prepared and produced a statement of facts, or a schedule, which showed the distances from the different stations, the rates charged for hauling coal, the entire operating cost of hauling *372 it from the Hocking district at or near Nelsonville to each of the points mentioned in the bill of complaint, the revenue per ton per mile, the cost per ton per mile and the ratio of the cost to the revenue.
Mr. Dunham, the traffic manager of the plaintiff, testified to the general effect that certain of the rates maintained and accepted by the plaintiff before the making of the order attacked, are compensatory. The railway company offered no evidence to refute the statements contained in the schedule prepared by the witness, Hillman.
It may be conceded that the cost of service is a difficult matter to determine under any circumstances and that it would be a peculiarly difficult matter for a court without practical experience in railroad operation. However, it would seem to be reasonable that the calculations and conclusions of experts would be valuable in that behalf. It is also a reasonable suggestion that if the railroad company claimed that the deductions of Mr. Hill-man were erroneous, it being in possession of the more exact data by which the error could be determined, it should have produced such data upon the hearing.
As to a similar situation the supreme court of the United States, in the Minnesota rate case, Simpson et al. v. Shepard, 230 U. S., 352, 466, speaking by Mr. Justice Hughes, said: “It .may be said that this would have been a very difficult matter, but the company having assailed the constitutionality of the state acts and orders was bound to establish its case, and it was not entitled to rest on expressions of judgment when it had *373 it in its power to present accurate data which would permit the court to draw the right conclusion.”
It has come to be a well-settled proposition that while the cost of service does not determine rates, it is an important element in arriving at a judgment with reference to a rate. It is recognized in the language of the federal supreme court which is quoted heretofore.
The record also discloses other bases of comparison which might reasonably have been followed by the commission and the courts below and which we are not able to say are.not sustained by the evidence, viz., the railway fuel-coal rate maintained by the plaintiff from the Nelsonville district to Toledo, the rate on commercial coal from the Chesapeake & Ohio and from the Kanawha & Michigan railway companies over the plaintiffs railroad, and the rates fixed by other railway companies for somewhat similar service in Other districts of the country, a number of which are shown by the evidence.
The propriety of deduction from information gathered by evidence of the character just referred to, is likewise recognized in the Northern Pacific case.
Finally, it is earnestly contended by the plaintiff in error that in fixing the rates set out in its order the commission entirely overlooked the fact that the company is entitled to some compensation for profit, for the terminal services rendered by it. The terminal services rendered by the railroad company in the assembling of the coal for shipment and the facilities furnished for distribution at the point of *374 delivery are, of course, as much a service rendered to the shipper as is the hauling of the freight over the railroad line.
It is conceded that the commission, in arriving at its results, concluded from the evidence that the cost of moving the traffic was sixty per cent, of the rate that should be fixed for the shipment; that is to say, if the operating expense is ascertained, that expense is assumed to be sixty per cent, of the rate that should be fixed. The commission found that the cost of hauling coal between Nelsonville and Toledo was 39.02 cents per ton. Assuming that amount to be sixty per cent, of the rate that should be charged, the full rate.is ascertained to be sixty-five cents per ton. The commission added ten cents per ton for terminal service at the originating point and the same amount for the same service at the destination, and fixed the total eighty-five cents as the rate to be charged. The twenty cents was added to cover terminal service, and we are of the opinion that the record justifies the finding of the courts below that the allowance of twenty cents for terminal service was sufficient to cover cost and a proper compensation.
We have not been able to find that this record discloses that the order of the commission denies to the plaintiff company a reasonable reward for its service, or that it is unlawful or unreasonable.
The judgment will be affirmed.

Judgment affirmed.

Nichols, C. J., Donahue, Wanamaker, Newman, Jones and Matthias, JJ., concur. ■